Rainer Friedrich Huck
1680 East Atkin Avenue
Salt Lake City, Utah 84106
Telephone: (801) 201-9660
Email: rfhuck@yahoo.com
*Pro Se*

John Anderson
629 Lake Street, #3
Salt Lake City, Utah 84102
Telephone: (801) 688-3192
Email: LANDLORD@SISNA.COM
*Pro Se*

FILED US District Court-UT
SEP 09 '22 PM 08:16

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | | |
|---|---|---|
| RAINER F. HUCK, an individual, JOHN ANDERSON, an individual, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | COMPLAINT |
| UNITED STATES OF AMERICA; BUREAU OF LAND MANAGEMENT; and WILLIAM PERRY PENDLEY and MICHAEL D. NEDD, in their Official Capacities as Deputy Director of Policy and Programs and Deputy Director of Operations (respectively), | ) | FOR DECLARATORY AND INJUNCTIVE RELIEF |
| Defendants. | ) | Case: 2:22-cv-00588 Assigned To : Bennett, Jared C. Assign. Date : 9/9/2022 Description: Huck et al V USA et al |

TO THE HONORABLE JUDGE OF SAID COURT:

1

A.  This action concerns the rampant elimination of public access to, and travel upon, the public lands of the United States. Plaintiffs maintain that all Americans, regardless of religion, age, race, health, strength, economic standing, and especially those who are elderly, handicapped or disabled, have Constitutional and other legal rights to access public lands held under the jurisdiction of the Bureau of Land Management ("BLM") on a basis equal to those who have the strength and ability to travel by muscle power, even if doing so means that the handicapped or disabled must access those public lands via mechanized means.

B.  Tragically, the majority of our most beautiful public lands are now off-limits to most Americans, particularly our most vulnerable – the aged, the disabled, the handicapped, and anyone else with mobility impairments; all because of actions of the elitist and selfish actions of "Earth-religionists" organizations, many of which are improperly operating as 501(c)(3) charitable or non-profit organizations. The predominant pretextual reason asserted by those organizations for denying much of the American public access to these public lands is to "protect" them, which implies that the public lands have "personhood" or are "sentient" which entitles them to such protection.

C.  These Earth-religionist organizations have persuaded Congress and government agencies and their personnel to violate the United States Constitution and other federal statutes and regulations. This is done through designating land as "Wilderness" even though the land fails to meet the requirements for such designations as well as massive administrative closures to people on motor vehicles in order to prepare these lands for future Wilderness designations.

D. The BLM, as well as other public land management agencies having been conducting what amounts to a pogrom against people who use motorized means to access public lands. It is essentially creating two classes of citizens: Those who are welcomed and have unfettered access to public lands because they are able-bodied and ideologically aligned with the Earth religionists; and all others who are subjected to unrelenting regulation, loss of access, taxation, threat of criminal fines and civil penalties from the government, and villainization in the media.  A massive network of historic and traditional roads and rights-of-way were created to allow access to public lands by all Americans, not just the elite few, mostly white young and healthy. The government has converted most of these roads and lands into vast vehicle-free zones which discriminate racially and economically against many minority populations and enhance "white privilege",  and also discriminate against all those who are handicapped, old, weak, in poor health, or otherwise mobility impaired.  People who love to access and explore public lands have been divided by the hateful rhetoric and litigation spawned by the "Earth religionists." Government policies, under direction of the Earth Religionists have long been so arbitrary and capricious that they drove away TV's first Reality Show, Mark Burnett's "Eco-challenge" in 1995, which could have been a huge and continuing economic boom to the people of Southern Utah. After all the senseless bureaucratic obstacles and hassles, he vowed never to return to Utah, and never did. Eco-challenge turned out to be a massive hit which bestowed great wealth to venues outside of Utah.

E. Another, much more impactful example of an improper administrative action, occurred on September 15, 2006, when BLM Richfield District Manager Cornell Christensen

closed nearly the entire Factory Butte recreation area to people using vehicles with just "a stroke of his pen." An entity called the "The Utah Shared Access Alliance" with substantial support of affected county, local and state representatives favored the creation of a Special Management Recreation Area that preserved motorized access patterns to the area that had been in use for at least three generations. The area around Factory Butte, which resembles a barren Martial landscape shaped by endless erosion, has terrain that is uniquely suited to motorized recreation.

F. Mr. Christensen, however, thwarted the will of the people by invoking the Endangered Species Act purportedly with respect to the "Wrights Fish Hook Cactus" (sclerocactus wrightiae) and issued an "emergency" vehicle closure in a geographic area that almost perfectly mirrored the Motorized Recreation Management Plan developed by the Utah Shared Access Alliance and which had been incorporated into the Resource Advisory Council's plan for the Factory Butte recreation area. Incredibly, none of the Wrights Fish Hook Cactus grew anywhere near Factory Butte. Further, the Factory Butte area is seldom visited by hikers or horseback riders. This closure was the corrupt product of collusion between the BLM and the Earth Religionists and will be a major focus of this litigation.

G. Another egregious example is found in the Moab, Utah area, where the BLM closed historic and traditional access to Bull Canyon and to the Gemini Bridges denying access to these scenic wonders to all those unable to walk from the road closure point. Just last year the BLM closed 49 miles of spur roads in the Canyon Rims area that provided spectacular vistas of the Canyonlands from an elevation of 2,000 ft above the basins. In

addition, The BLM is proposing the closure of 195 miles of historic and traditional roads

in the Gemini Bridges-Labyrinth Canyons area. Some of these roads are over 100 years

old and reach beautiful and scenic destinations. These closures have only one purpose:

To prepare the areas in question for future Wilderness Designation. In addition, the BLM

closed all of the primitive campsites along highway 313 that were used by people in

vehicles and the closed all campgrounds that accommodated recreational vehicles in

Kane Creek Canyon, Moon Flower Canyon, and along the Potash Road.

H.  Another example can be found in the south end of the Henry Mountains in the Henry

Mountains Resource Area when the BLM used heavy equipment and disturbed

thousands of tons of soil to dig up a beautiful two-track jeep road that had led to an

extraordinary and unique rock cropping. Plaintiff Huck made a FOIA request concerning

the legal basis for this action but the BLM declined to provide information.

I.  One of the most recent examples of this elimination of access to public lands by

mechanized means concerns roads within the San Rafael Swell area of Utah in tracts of

land which have now been designated as "Wilderness." That designation was made

contrary to existing law and deprives the Plaintiffs and other aged, handicapped or

disabled people access to public lands to which they formerly had access. There is no

rational basis for the designation of certain areas as wilderness and eliminating

mechanized access to them especially for the aged, handicapped and disabled. In fact,

several of the areas designated as "wilderness" did not meet the statutory requirements

for designation as a wilderness area because of the existence of roadways and pervasive

historic mining activity within those areas. There is no justification for the BLM and

other government agencies to ignore prior law recognizing the status of traditional and historic roadways, and instead eliminate those roadways upon public lands. Currently, the BLM, in collusion with the Earth Religionist organizations, is working to "remediate" (meaning destroy) existing roads both inside of and adjacent to the newly designated Wilderness areas, all without addressing the legally mandated NEPA process for such actions.

J.  Congress has previously violated the Establishment Clause and other federal law by passing the Washington County Wilderness Act which closed mechanized access to land known as "Canaan Mountain" south of Zions National Park. This "Wilderness" area did not qualify for such designation because it had been heavily logged to provide lumber for early development of St. George, Utah and contained an historic sawmill. This area was accessed by mechanized travel via the Canaan Mountain Sawmill Road which the BLM administratively closed in the 1970s, but it was used and continued to be used by local residents. The Canaan Mountain Sawmill Road was a traditional and historic road grandfathered with the 1976 passage of the Federal Land Policy and Management Act and should not have been closed to motorized travel

K.  The administrative designations by the BLM and the Wilderness designations made by Congress were made in violation of the First Amendment's Establishment Clause. Those actions have been justified by acceptance, establishment, and support of various "Earth-religions" which hold beliefs in a "Gaia" or a "Mother Earth" and whose gospels falsely imbue land as having anthropomorphic features in need of "protection", even though mechanized travel in general, but especially for the handicapped or disabled, poses no

threat to the land or the environment and poses dramatically less risk and harm than "Mother Nature" herself exerts upon the land. As an exemplar of the "Earth-religionist," "Gaia," or "Mother Earth" beliefs; on September 11, 2020, Speaker of the House, Nancy Pelosi, said "Mother Earth is angry. She's telling us, whether she's telling us with hurricanes on the Gulf coast, fires in the West, whatever it is, that the climate crisis is real and has an impact."

L. As examples of the fanaticism of the Earth-religionists, Plaintiff Huck, in his many travels on the public lands, has suffered verbal abuse and threats of physical violence, and he has encountered dangerous "booby-traps" placed on the public lands by the devout Earth-religionists who have been emboldened to do so by the incendiary language and hate speech directed by Earth-religionists toward people who use motor vehicles on public lands and who are seen as defacing or injuring their Goddess Gaia. These incidents have been deeply troubling and emotionally stressful to Plaintiff Huck.

M. Further, the BLM has long treated motor-assisted travelers including the aged, disabled and handicapped, as second-class citizens who are allowed access to public lands and facilities only at the pleasure of the Earth-religionists, and can be expelled whenever their presence becomes inconvenient. This discrimination parallels, in many ways, the treatment afforded our African-American citizens to public facilities until the enactment of the Civil Rights Act.

N. Many of the decisions to bar citizens, including Plaintiffs, from areas under the jurisdiction of the BLM have resulted from arbitrary and capricious actions taken by the BLM based upon purported reasons that were contrived and/or pretextual.

O.  Accordingly, in this action, Plaintiffs seek declaratory relief that the recent Wilderness designations in the San Rafael Swell, as well as all other BLM Wilderness areas, as they restrict the access of only those people who travel with motor assistance and do not restrict the access of those who travel by muscle power, are unconstitutional, illegal, and void. Plaintiffs also seek immediate temporary, preliminary and permanent injunctive relief precluding the BLM from enforcing any statutes, regulations or penalties against mechanized travel within those areas thereby allowing Plaintiffs, their entourages, and other disabled or handicapped persons mechanized access to the roadways and areas under the jurisdiction of the BLM to which Plaintiffs have historically had access. In other words, Plaintiffs, who require motorized access because of their ages and disabilities, seek to be guaranteed the same rights to access public lands as are hikers, horsemen, and other muscle powered travelers. It should be noted that this discriminatory situation could also be rectified by closing the Wilderness areas to ALL human entry.

P.  Plaintiffs also seek immediate temporary, preliminary and permanent injunctive relief precluding the BLM from enforcing any statutes, regulations or penalties against mechanized travel on all lands, roads, and trails that were open to motorized travel at the time of the passage of FLPMA in 1976 , thereby allowing Plaintiffs, their entourages, and other disabled or handicapped persons mechanized access to the lands under the jurisdiction of the BLM.

<u>DESCRIPTION OF THE PARTIES</u>

1. Plaintiff, Rainer F. Huck, ("Huck"), is a United States citizen and resident of the State of Utah. Huck is 76 years old and has physical disabilities that prevent his access to public lands under the jurisdiction of the BLM. More particularly, Huck suffers from severe Asthma and COPD which prevents him from hiking even short distances. Huck has been an avid off-road motorcyclist for over 50 years. He has been prevented and deprived from being able to visit scenic and recreational areas that he has previously been allowed to visit because of the decisions of the BLM limiting motorized access to those areas.

2. During the Summer of 2020, Huck intended to go on off-road motorcycle trips as he has for over 50 years, and it had been his intent in the Spring of 2021 to go on off-road motorcycle trips to areas within Utah which the BLM presently bars vehicular travel and/or which have been improperly designated as wilderness areas. He has failed to do so because of fear of civil or criminal penalties being lodged against him. It is Huck's present intent to go to those same areas in the Fall of 2022. Those areas include, but are not limited to: Seger's Hole, Chute Canyon, Pastures Road, Muddy River Road, Earnie's Canyon, Old Woman Wash, Mexican Mountain Road, June's Bottom Road, Copper Mine Road (north of Temple Wash), Saddle Horse Canyon, Salt Wash, San Rafael River Road, Iron Wash, the road through the "Blocks,"  Mexican Mountain Road, the road to the historic Swasey's Leap, and June's Bottom Road. In addition, the BLM installed, at great expense, a steel fence across the road to Scott's Basin in Deep Creek Mountains to keep people on vehicles out. This is a road that reaches a gorgeous viewpoint of the Ibapah valley and the only road that allows access into this mountain range.

3. Plaintiff, John Anderson ("Anderson"), is a United States citizen and resident of the State of Utah. Anderson is over 83 years old and also has physical disabilities that prevent his access to public lands under the jurisdiction of the BLM. More particularly, Anderson has heart disease and skeletal degeneration. Anderson has been and is an avid all-terrain vehicle rider and is now prevented and deprived of the opportunity to visit scenic and recreational areas that he has previously been allowed to visit and enjoy.

4. In the summer of 2020, Anderson had intended to go on all-terrain vehicle off-road trips utilizing one or more of the closed roads described in paragraph 2 above. It is his intent to immediately go on all-terrain vehicle off-road trips to areas which the BLM presently bars vehicular travel and/or which have been improperly designated as wilderness areas in the Spring of 2021. Anderson declined to go on those trips last summer because of fear of prosecution. Given Anderson's age and health-conditions, unless immediate injunctive relief as prayed for herein is granted, he will be denied the ability to visit the public lands described herein before he dies.

5. Huck and Anderson are hereinafter referred to collectively as "Plaintiffs."

6. Defendant United States of America ("United States") is the sovereign trustee of national natural resources not otherwise owned by private citizens and the states. In its sovereign capacity, the United States controls federal public lands, waters and other natural resources. The United States implements laws passed by Congress and institutes regulations adopted by its agencies.

7. Defendant the Bureau of Land Management ("BLM") is an agency within the Department of the Interior. Defendant William Perry Pendley, in his official capacity as is

a Deputy Director, Policy and Programs, and Michael D. Nedd, in his official capacity as

its Deputy Director, Operations are singularly or collectively exercising authority of the

Director of the BLM. The BLM is tasked with management of public lands and the

administration and enforcement of the laws challenged herein.

## JURISDICTION AND VENUE

8. Jurisdiction is proper in this Court pursuant to Article III, Section 2 of the United States

Constitution granting judicial power for all cases in law and equity arising under the

Constitution, and the laws of the United States. Jurisdiction also is provided by 28 U.S.C.

§ 1331 because this lawsuit concerns the constitutionality of regulations and rules

promulgated by the Defendants; and the constitutionality of the Dingell Act (as defined

below). The Court also has jurisdiction to compel the BLM and its director to perform

their duties pursuant to 28 U.S.C. § 1361.

9. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201

and 2202, by 5 U.S.C. §§ 702, 703, and 705; by Rules 57 and 65 of the Federal Rules of

Civil Procedure and by the general legal and equitable powers of the Court.

10. The Plaintiffs are of advanced age and suffering from significant health issues. They have

limited time in which to carry out their intent and desire to presently visit the BLM-

controlled lands as they have for many years in the past. They have been placed at risk

of fines and imprisonment by the "wilderness" designations and land use management

plans described herein and by the BLM's actual and threatened actions against users of

mechanized vehicles traveling upon geographic areas and roadways in which the BLM

has attempted to deny mechanized travel.

11. This case presents an actual case and controversy; the interests of the Plaintiffs are

adverse to those of the United States as to the laws that are the subject of this lawsuit

and the BLM, and the Court can provide a remedy by declaring and ordering that the

subject wilderness designations are unconstitutional and by declaring and ordering that

the BLM to allow public access to those areas as well as other areas closed off through

land management plans and other administrative actions.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Defendants

exercise jurisdiction over lands in this district, Plaintiffs reside in this District, a

"substantial part of the events giving rise to the claim occurred" in this district, and the

geographic areas and rights at issue are involved here.

## FACTUAL BACKGROUND

13. The Wilderness Act, 16 U.S.C. §§ 1131 -1136, defines "wilderness" as:

(c) A wilderness, in contrast with those areas where man and his works dominate
the landscape, is hereby recognized as an area where the earth and its
community of life are untrammeled by man, where man himself is a visitor who
does not remain. An area of wilderness is further defined to mean in this Act an
area of undeveloped Federal land retaining its primeval character and influence,
without permanent improvements or human habitation, which is protected and
managed so as to preserve its natural conditions and which (1) generally appears
to have been affected primarily by the forces of nature, with the imprint of
man's work substantially unnoticeable; (2) has outstanding opportunities for
solitude or a primitive and unconfined type of recreation; (3) *has at least five
thousand acres of land or is of sufficient size as to make practicable its
preservation and use in an unimpaired condition*; and (4) may also contain
ecological, geological, or other features of scientific, educational, scenic, or
historical value.

14. The Federal Land Policy and Management Act was enacted in 1976 and is codified at 43 U.S.C. §§ 1701 et seq. Pursuant to 43 U.S.C. § 1732(a), the public lands are to be managed "under principles of multiple use and sustained yield, in accordance with the land use plans developed … under section 1712 of [Title 43] when they are available, except that where a tract of public land has been dedicated to specific uses according to other provisions of law it shall be managed in accordance with such law." If 43 U.S.C. § 1732(a) was adhered to by the governing federal agencies, the Earth-religionists' goals would be thwarted.

15. 43 U.S.C. § 1712 provides in relevant part:

a. Development, maintenance, and revision by Secretary

The Secretary shall, with public involvement *and consistent with the terms and conditions of this Act,* develop, maintain, and *when appropriate,* revise land use plans which provide by tracts or areas for the use of the public lands….

c. Criteria for development and revision

In the development and revision of land use plans, the Secretary shall –

1. use and observe the principles *of multiple use* and sustained yield set forth in this and other applicable law;
2. use a systematic interdisciplinary approach to achieve *integrated consideration of physical, biological, economic, and other sciences;*
3. give priority to the designation and protection of areas *of critical environmental concern;* …

5. *consider present* and potential *uses* of the public lands; … [and]

7. weigh long-term benefits to the public against short-term benefits….

16. Contrary to the foregoing statute, the BLM and other government agencies tasked with management of federal public lands, have developed land use plans that are *inconsistent* with the terms and condition of the Act and have *inappropriately* revised land use plans. The BLM and other government agencies have ignored the obligation to provide for *multiple uses* of public lands under their jurisdiction. The BLM and other governmental agencies have not utilized systematic interdisciplinary approaches or used integrated considerations. The BLM and other government agencies have given priority to designation and protection of areas that are *not of critical environmental* concern. The BLM and other governmental agencies have not considered present and potential uses of public lands, especially for the aged, disabled and handicapped. Instead, they have uniformly discriminated against the rights of this most vulnerable population in favor of the young, strong, and healthy.

17. Under the guise of the Wilderness Preservation Act of 1964, the BLM and other governmental departments and agencies, in concert with environmentalists and members of various Earth-religions, have increasingly claimed the public lands for their own benefit and uses, culminating in the present day where they have gained near total dominion of these lands and the managing agencies. For over 40 years, the BLM and other government agencies exercising management authority over federal public lands have been administratively closing roadways, trails, and accesses to public lands under their "Resource Management Plans" (RMPs). A relatively recent example of this collusion and conspiracy was the prohibition of motorized access to the Factory Butte

recreation area described in paragraphs "A" through "J" in the opening paragraphs of this Complaint.

18. In violation of its current charter, the BLM (as well as other land management departments and agencies) has developed land use plans that are biased and discriminatory against aged, handicapped and disabled citizens of the United States who are now deprived of their ability to visit scenic and recreational areas to which they formerly had access.

19. In violation of its current charter, the BLM in its land use plans have identified potential wilderness areas which did not qualify for such designation under the FLPMA, and Congress has accepted the recommendations of the BLM and other government agencies and has designated land tracts as wilderness areas which fail to meet to the statutory definition of "wilderness" and are not of "critical environmental concern."

20. 43 U.S.C. §1782(a) provided that the Interior Secretary was to have created an inventory of wilderness study areas. Wilderness areas were defined as "roadless areas of 5,000 acres or more" that possess "wilderness characteristics" defined in the Wilderness Act …." Thus, under the current statutes, only land areas of at least 5,000 acres, that are roadless, and that possess wilderness characteristics should have been eligible for designation as wilderness areas.

21. In violation of its current charter, the BLM (as well as Congress and other land management departments and agencies) have ignored roadways that should have barred large tracts of land from being designated as wilderness areas.

22. The effort to designate more and more public lands as wilderness areas and/or to treat them as wilderness areas has been ongoing and systematic for decades. Even before such designations, the BLM began barring access to many lands, roads, trails and campsites that had historically been available to the aged, handicapped, and disabled via mechanized travel despite the fact that use of mechanized means caused no "damage" or "injury" to the land.

23. The BLM (as well as other departments and agencies) in concert and conspiracy with Earth-religionists have thus systematically, with malice at worst and indifference at best, acted to deprive the aged, disabled, or handicapped, such as Plaintiffs, as well as the vast majority of public land users who chose or require the use of motor vehicles to access and travel on the public lands, from being able to access and travel upon many of the public lands.

24. Further, the actions of the BLM in ignoring its charter have extended discriminatory consideration and incentive to muscle powered users, which represent a minority of real and potential users, creating an elite class with special and superior rights while blatantly discriminating against others, particularly the aged, disabled and handicapped.   In effect, the BLM's policies have created a modern-day version of "the King's forest" where only the chosen elite are permitted entry and the common man is barred.

25. These acts of discrimination have been justified by unconstitutional "Earth-religion" based arguments involving the "protection" or "preservation" of the land.   These terms are placed in quotations because they are anthropocentric and completely devoid of

any rational meaning as applied to nearly all tracts of BLM-controlled land (and wilderness in particular), which can neither be damaged or destroyed by any human action.

26. Our public lands are increasingly being set aside for adherents of the Earth-religions and closed to those persons who desire or require the use of motor vehicles to travel on and access choice places on these lands.  So striking has this trend been, that access for the aged, handicapped and disabled to public lands has diminished from more than 95% of BLM-controlled land in 1976 to less than 5% currently.   Compare this to access provided to muscle powered users which began at 100% and is still at 100% today.  (These figures do not apply to military reservations or Indian Tribal Lands.)

27. On March 12, 2019, President Donald J. Trump signed into law the John D. Dingell, Jr. Conservation, Management, and Recreation Act of 2019, P.L. 116-9 ("Dingell Act"). Among other things, Part II of the Dingell Act entitled "Emery County Public Land Management," took the following actions impacting land within Emery County, State of Utah:

a.  Established the John Wesley Powell National Conservation Area consisting of nearly 30,000 acres.

b.  Established the San Rafael Swell Western Heritage and Historic Mining Recreation Area consisting of nearly 217,000 acres.

c.  Added over a collective 660,000 acres of wilderness-designated lands through individual wilderness areas identified as the Big Wild Horse Mesa Wilderness, the Cold Wash Wilderness, the Desolation Canyon Wilderness, the Devil's Canyon Wilderness, the Eagle

Canyon Wilderness, the Horse Valley Wilderness, the Labyrinth Canyon Wilderness, the Little Ocean Draw Wilderness, the Little Wild Horse Canyon Wilderness, the Lower Last Chance Wilderness, the Mexican Mountain Wilderness, the Middle Wild Horse Mesa Wilderness, the Muddy Creek Wilderness, the Nelson Mountain Wilderness, the Red's Canyon Wilderness, the Rhino Head Wilderness not in initial list, the San Rafael Reef Wilderness, the Sid's Mountain Wilderness, and the Turtle Canyon Wilderness. These designations are hereinafter referred to as the "New Wilderness Areas."

d.  Added the Green River to the National Wild and Scenic Rivers System.

28. Pursuant to Section 1231(b) of the Dingell Act, the San Rafael Recreational Area was established for "to provide for the protection, conservation, and enhancement of the recreational, cultural, natural, scenic, wildlife, ecological, historical, and educational resources of the Recreation Area."

29. Section 1232(d) of the Dingell Act will allow for use of motorized vehicles in the Recreation Area on the roads and motorized routes to be designated and maintained in the Management Plan, but with no new roads.

30. Section 1231(a) of the Dingell Act specifically provides that "the following land in the State [Utah] *is designated as wilderness and as components of the National Wilderness Preservation System*: [each of the New Wilderness Areas was then listed]."

31. Section 1232(a) of the Dingell Act provided that: "Subject to valid existing rights, the [New Wilderness Areas] shall be administered by the Secretary *in accordance with the Wilderness Act (16 U.S.C. 1131 et. seq.)* ...."

32. 16 U.S.C. § 1133 of the Wilderness Act provides in relevant part that: "(b) …. Except as specifically provided for in this chapter, and subject to existing private rights, there shall be … no use of motor vehicles, motorized equipment … no other form of mechanical support …."

33. The designation of the New Wilderness Areas as "wilderness" therefore presently bars the use of motor vehicles and motorized equipment, including off-road motorcycles and ATVs.

34. In violation of the FLPMA and the Dingell Act; Congress and the BLM have designated their intent to close roadways that had been used for mechanized travel in at least the following New Wilderness Areas:

a.   Horse Valley Wilderness;

b.   Labyrinth Canyon Wilderness;

c.   Little Ocean Draw Wilderness'

d.   Lower Last Chance Wilderness;

e.   Middle Wild Horse Mesa Wilderness; and

f.   Muddy Creek Wilderness.

35. As a result of the designation of the New Wilderness Areas, Plaintiffs, and others so situated, have been or will be denied the ability to use the traditional and historic roadways in order to access sites, scenery, and recreational opportunities because their age, disabilities and/or handicaps prevent them from being able to do so in the absence of mechanized means of transportation.

36. Pursuant to the Dingell Act, it is the BLM which has responsibility to enforce prohibitions against mechanized travel within the New Wilderness Areas. In a Declaration dated January 17, 2020; Mr. Chris Conrad, Field Manager of BLM's Price Field Office has stated under penalty of perjury that "BLM now manages any routes not expressly left open by Congress *as closed* but has not issued any citations or otherwise enforced any of the new closures."

37. The BLM, in its closings of public land under its jurisdiction to motor vehicles and mechanized travel, has acted and continues to act in an arbitrary and capricious manner and in reliance upon contrived and/or pretextual grounds. Among other things, there is no consistency in thought or reason in the BLM's actions. For examples,

    a. Substantial funds and rights to access have been provided in facilities for mountain bikes in the Moab, Utah area; any damage from which would exceed any damage caused by mechanized travel by the aged, disabled or handicapped.

    b. Campsites used by mechanized traveler have been closed allegedly out of concern for contamination of waterways from human wastes, but most mechanized travelers have equipment to contain human wastes. In contrast, campsites have been opened up for mountain bikers and hikers who generally lack such equipment.

    c. The BLM has denied access to some roads by digging up sections of road with heavy equipment, making the roads impassable to mechanized travel, and impacting the land from the digging and earth gouging that far exceeds any alleged damage that had or could have resulted from mechanized travel.

    d. The San Rafael Swell area was not "pristine" and "untrammeled," but was instead mined extensively in the 1950s and 1960s, with many roads built in connection with the mining

20

activities throughout that area. Nevertheless, in violation of its charter, the BLM has been closing the mines and eliminating the roads. None of these areas are of "critical environmental concern."

e.  As alleged above; essentially the BLM, in conspiracy with Earth-religionists have created the equivalent of "the King's forest" where choice land is set apart from the "rabble" and the masses and left only to the rulers, the elite, or the privileged and their cronies. Rather than being grounds for execution as in days of yore, however, the government now threatens violators with extensive fines and imprisonment.

38.  Many closure designations of wilderness study areas and in RMPs for public lands have been the result of "settlements" of collusive lawsuits between various "environmental religion" groups and the government agencies. As part of the settlement agreements, commissions or committees are established to determine the uses of public land, but the aged, disabled and handicapped are denied due process and have no ability to influence the decisions of the various commissions or committees to provide mechanized access to scenic areas for the handicapped and disabled. While purporting to preserve wilderness areas for all Americans, the wilderness designations effectively only allow access by the able-bodied.

39.  The power and influence of the Earth Religionists has been so great that they were able to persuade the US Congress to contort the Americans with Disabilities Act (ADA) to exempt the greatest resource of all from this important legislation:  The Public Lands. Enacted on July 26, 1990, this act was intended to provide broad non-discrimination protection for individuals with disabilities in employment, public services, public

accommodations, and services operated by private entities, transportation and telecommunications.   However, pursuant to Sec. 507 of the ADA, Congress affirmed, to be consistent with the Wilderness Act, no agency is required to provide any form of special treatment or accommodation, or to construct any facilities or modify any conditions of lands within a wilderness area in order to facilitate such use.   Because of this, while the business community, public establishments, churches, and schools are required to provide services for the disabled, the Federal Government is NOT required to do so.   In effect, the Earth Religionists have caused a law that affects only a relatively small and elite population, The Wilderness Act, to supersede a law that affects a very large and vulnerable population, the ADA.   This is contrary to good public policy and illustrates the massive power wielded by the Earth Religionists, even 32 years ago.

40. Plaintiffs have a present intent and desire to use their motorized vehicles to travel over Roads and trails which have been closed off by the BLM in the New Wilderness Areas and other areas described in this Complaint. Plaintiffs have not acted upon their present intent and desire to do so because of legitimate fear of fines and/or imprisonment.

41. The Plaintiffs' fear of fines and imprisonment should they go upon roads or other areas in the New Wilderness Areas is well-founded based upon actions by the BLM. More particularly,

a.   In 2014, a San Juan County Commissioner, Phillip Lyman, was found guilty of conspiring to operate off-road vehicles on public lands closed to off-road vehicles. Mr. Lyman was

sentenced to ten days in jail, fined $1,000 and ordered to pay restitution of nearly

$100,000 in Case No. 2:14-cr-00470-DN-1 in this district court.

b.  In 1978, the BLM closed a roadway in Happy Canyon located in Wayne and Garfield

Counties in Utah.

c.  43 CFR § 6302.20 warns the public that: "Except as specifically provided in the

Wilderness Act, the individual statutes designating the particular BLM wilderness area,

or the regulations of this part, and subject to existing rights, in BLM wilderness areas

you must not: … (d) Use motorized equipment; or motor vehicles … or other forms of

mechanical transport."

d.  43 CFR 6302.30 provides in relevant part: "(a) If you commit a prohibited act listed in §

6302.20 in a BLM wilderness area, you are subject to criminal prosecution on each

offense. If convicted, you may be fined not more than $100,000 under 18 U.S.C. 3571. In

addition, you may be imprisoned for not more than 12 months, as provided for by 43

U.S.C. 1733(a).

42. The Merriam-Webster dictionary defines "religion" as "a personal set or institutionalized

system of religious attitudes, beliefs, and practices" and "a cause, principle, or system of

beliefs held to with ardor and faith." The Stanford Encyclopedia of Philosophy generally

defines a "religion" as involving "a communal, transmittable body of teachings and

prescribed practices about an ultimate, sacred reality or state of being that calls for

reverence or awe, a body which guides its practitioners into what it describes as a

saving, illuminating or emancipatory relationship to this reality through a personally

23

transformative life of prayer, ritualized meditation, and/or moral practices like repentance and personal regeneration."

43. By any such definitions, the Defendants and their co-conspirators support Earth-religion tenets. They have religious attitudes, beliefs and practices that attempt to "preserve" and protect "Gaia" or "Mother Earth" from even reasonable uses, believing that roads scar and that mines pierce and harm "Her." They view the Earth as being sacred and an object to be revered and held in awe. They seek to "commune" with Her and engage in "moral practices" which essentially view mankind as a contaminant and a curse upon Her.

44. The BLM has violated the First Amendment to the United States Constitution in that it has assisted the establishment of these Earth-religions.

FIRST CAUSE OF ACTION

(Declaratory Judgment that the Dingell Act's Designation of Certain Areas of Wilderness in Emery County and the RMPs Issued by the BLM Denying Access to Mechanized Travel Violates the First Amendment.)

45. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 43 above.

46. The First Amendment to the United States Constitution provides in relevant part that: "Congress shall make no law respecting establishment of religion…."

47. Congress has violated the Establishment Clause of the First Amendment by passing the Dingell Act and other laws which violate the FLPMA and ignore the definition of "wilderness" as set forth in those statutes.

48. Congress has previously violated the Establishment Clause by passing the Washington County Wilderness Act which closed mechanized access to land known as "Canaan Mountain" south of Zions National Park. This "wilderness" area did not qualify for such designation because it had been heavily logged to provide lumber for St. George, Utah and contained an historic sawmill. This area was accessed by mechanized travel via the Canaan Mountain Sawmill Road which the BLM administratively closed in the 1970s, but which was used and continued to be used by local residents.

49. The designation of additional "wilderness" areas has been done to support and establish the Earth-religions and their tenets regarding the "sacredness" of public lands.

50. The BLM has violated the Establishment Clause of the First Amendment by closing lands to mechanized access to many lands within recreation areas or under RMPs in support of Earth-religions and their tenets regarding the "sacredness" of public lands.

51. As a result of the establishment of these Earth-religions by the Defendants, Plaintiffs have suffered, and will continue to suffer, irreparable injury, including but not limited to being denied access to the wilderness and other areas described in this Compliant. More particularly, given their ages, disabilities and handicaps, Plaintiffs will be denied the ability to view, enjoy and recreate upon the newly-designated Wilderness Areas and upon lands which have been closed off from mechanized access by the BLM in violation of its statutory charter and in violation of FLMPA.

52. Plaintiffs are entitled to a declaration that the Dingell Act and the establishment of RMPs for land under BLM-jurisdiction violates the Establishment Clause of the First Amendment. Plaintiffs are entitled to immediate and permanent injunctive relief against

Defendants denying the Plaintiffs mechanized access to roadways and trails and other areas formerly open to the public but which have now been closed pursuant to RMPs.

SECOND CAUSE OF ACTION

(Declaratory Judgment that the Dingell Act's Designation of Certain Areas of Wilderness in Emery County and the Planned Closure of Roads Pursuant to RMPs Violate the Due Process Clause of the Constitution and Denies Equal Protection to the Aged, Handicapped and Disabled)

53. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 51 above.

54. The Due Process Clause of the Fifth Amendment provides in relevant part: "nor shall any person … be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

55. The Fifth Amendment contains an "implicit" "equal protection principle" binding the federal government. *Sessions v. Morales-Santana,* U.S.137 S.Ct. 1678, 1686 (2017).

56. Legislation that imposes irrational requirements or that makes irrational distinctions violates the Due Process Clause.

57. The Administrative Procedures Act requires the Court to hold unlawful and set aside any agency action that is, among other things, (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (b) contrary to constitutional right, power, privilege, or immunity, and (c) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. 5 U.S.C. § 706(2).

58. The BLM is an "agency" under the Administrative Procedures Act, 5 U.S.C. § 551(1), and the regulations and rules promulgated or that will be promulgated under the Dingell Act are "rules" under the Administrative Procedures Act, 5 U.S.C. § 551(4).

59. The Defendants have violated the Due Process Clause by denying the Plaintiffs, who are aged, handicapped and disabled, equal protection and reasonable access to scenic and recreational areas enjoyed by the able-bodied based upon arbitrary and capricious reasoning or abuses of discretion.

60. The Defendants have violated the Due Process Clause by denying the Plaintiffs and other similarly situated individuals any real input or ability to protect their interests in the decision-making process regarding the designation of wilderness areas. More particularly, much is said as to how all stake holders and interested parties were given the opportunity to participate in the process leading to the development of the SRRA Wilderness legislation.   That assertion was false.   Plaintiff Anderson attended nearly every meeting of the Emery County Public Lands Council.   For this commitment he was ridiculed, insulted, humiliated and marginalized in an attempt to silence his voice.   Every other advocate for motorized access to these public lands were similarly treated and left in disgust.  Plaintiff Anderson stayed. Despite his age and disability, he traveled the 300-mile round trip many times in a vain attempt to bring balance to the proceedings.  The fix was in, however, and the outcome pre-ordained.

61. The Defendants have violated the Due Process Clause by designating as wilderness areas large tracts of land in the New Wilderness Areas which are not of "critical environmental concern."

62. Because of the Defendants' actions, Plaintiffs have suffered, and will continue to suffer, irreparable injury.

63. Plaintiffs are entitled to a declaration that the Dingell Act violates the Due Process Clause of the Fifth Amendment.

64. Plaintiffs also are entitled to a declaration that the actions of the BLM in instituting RMPs and engaging in other acts that deny the Plaintiffs and others similarly situated to roads, trails and other areas to which the public has had access using mechanized travel violates the Due Process Clause of the Fifth Amendment.

65. Plaintiffs are entitled to immediate and permanent injunctive relief preventing Defendants from closing roads, trails, and access to areas previously available to mechanized or motorized travel in the New Wilderness Areas, recreational areas, or otherwise implementing the Dingell Act and RMPs is unlawful and unconstitutional.


THIRD CAUSE OF ACTION

(Declaratory Judgment that BLM has exceeded the Authorities Granted by Congress)

66. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 65 above.

67. In the landmark decision in the case of West Virginia v. Environmental Protection Agency, No. 20-1530 decided June 30, 2022, the Supreme Court of the United States ruled that the EPA had exceeded the authorities granted it by congress in its regulatory activities. By implication

and inference, this decision applies to all Federal Agencies, of which most, if not all, have exceeded their congressional authorities and mandates to greater or lesser extents. It is clear that the behavior of the BLM over the past forty years falls in the "greater" category-perhaps even as the greatest.

68. The BLM has not only exceeded the authority given it by Congress; it has deformed it beyond all recognition creating a land eating monster chewing up multiple use lands and spitting out nothing but Wilderness, crushing the rights of our most vulnerable populations in the process.

PRAYER FOR RELIEF

Based upon the foregoing, the Plaintiffs Rainer Huck and John Anderson, respectfully petition the Court to:

A. Declare the Dingell Act's designation of new wilderness areas, new recreation areas and the implementation of RMPs that restrict such areas to mechanized travel in response to the demands of the Gaia worshippers and Earth-religionists to be a violation of the Establishment Clause.

B. Declare unlawful designations of wilderness that fail to meet the statutory definition of "wilderness" and the implementation of RMPs and other rules and regulations that

prohibit mechanized access to areas to which the aged, disabled, and handicapped had access previously as violating the due process clause of the Fifth Amendment to the Constitution.

C.  Enjoin temporarily, preliminarily and permanently, Defendants and their employees, agents, successors, or any person acting in concert with them, from implementing, regulating, enforcing or otherwise acting under the authority of the Dingell Act and/or implementing RMPs by closing roads, trails and other area access from closing any traditional and historic roadways, trails and areas under BLM jurisdiction to the aged, handicapped and disabled.

D.  Enjoin during the pendency of this case, any enforcement action against Plaintiffs and their entourages when on any lands, roadways and trails that were open to the public prior to the passage of the FLPMA Act.

E.  Order the Defendants to implement access opportunities to handicapped, aged, and disabled people on non-muscle powered vehicles equal to that granted to people who travel by muscle power.

F.  Order the Defendants to immediately remove the steel fence blocking access to the upper portion of the Scott's Basin Road in the Deep Creek Mountains.

G.  Strike Section 507 of the Americans with Disabilities Act as being unconstitutional, discriminatory, and contrary to public policy.

H.  Award Plaintiffs Huck and Anderson the sum of One Million Dollars each, to be drawn from the Defendant's budgets, as compensation for years of discrimination, intimidation, and loss of access to the public lands that belong to ALL Americans.

I. Create a fund of Five Millions Dollars, renewed on an annual basis, dedicated to protecting and maintaining access rights to the public lands for populations herein described, from future collusive actions of Defendants and the Earth Religionists to minimize or extinguish these rights.

J. In the event that Plaintiffs obtain counsel, to award Plaintiffs their reasonable costs, including attorneys' fees.

K. Grant Plaintiffs such other and further relief to which they are justly entitled at law and in equity.

RESPECTFULLY SUBMITTED this  Ninth  day of September, 2022.

Plaintiff Rainer Huck,  Plaintiff John Anderson