## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RAINER F. HUCK, an individual, and JOHN ANDERSON, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:22-cv-00588-RJS-DBP<br><br>Chief District Judge Robert J. Shelby<br><br>Chief Magistrate Judge Dustin B. Pead |

Plaintiffs Rainer F. Huck and John Anderson have repeatedly challenged Congress's designation of certain public lands as wilderness areas closed to motorized vehicles.  In their latest Complaint, Plaintiffs assert, among other things, that Congress's designation of these wilderness areas and the accompanying motor vehicle restrictions violate the First Amendment's Establishment Clause and deprive them of due process and equal protection under the Fifth Amendment.[1]  Plaintiffs also argue that the Bureau of Land Management (BLM) motor vehicle restrictions exceed the authority granted by Congress.[2]  Now before the court is Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' Complaint.[3]  For the reasons discussed below, Defendants' Motion is GRANTED IN PART and DENIED IN PART.

---

[1] *See* Dkt. 1 (*Complaint*) at 6–8, 24–28.

[2] *Id.* at 28–29.

[3] Dkt. 16 (*Defendants' Motion*); *see* Fed. R. Civ. P. 12(b)(6).

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are off-road enthusiasts whose longtime hobby was disrupted when Congress designated public lands in Utah as wilderness areas under the 2019 John D. Dingell Jr. Conservation, Management, and Recreation Act (Dingell Act).[4]  These designated wilderness areas are now subject to more stringent use restrictions, including a prohibition on motor vehicle access.[5]

Plaintiffs have made three attempts to challenge these wilderness area designations and the accompanying motor vehicle restrictions.  First, on July 29, 2019, Plaintiffs filed suit against BLM and others, alleging the designations were "made contrary to existing law and deprived Plaintiffs and other aged, handicapped or disabled people access to public lands."[6]  However, the court dismissed Plaintiffs' complaint for lack of standing.[7]  It concluded that while "Plaintiffs allege that they have been deprived of the opportunity to visit scenic and recreational areas they were previously allowed to visit, . . . the fact that Plaintiffs have visited these areas proves nothing."[8]  To satisfy the injury-in-fact requirement for Article III standing, the court explained Plaintiffs needed to allege more than "some day" intentions to return to the wilderness areas.[9]

---

[4] *Complaint* at 9–10, 17–20; *see also* Pub. L. No. 116-9, 133 Stat. 580 (2019).

[5] *See* 16 U.S.C. § 1133(c) ("[E]xcept as necessary to meet minimum requirements for the administration of the area . . . , there shall be no temporary road, no use of motor vehicles, motorized equipment or motorboats, . . . and no structure or installation within any [wilderness] area."); *see also* 43 U.S.C. §§ 1731(b), 1732(a) (delegating authority regarding the management of designated wilderness areas to BLM).

[6] *Complaint* at 2; *Huck et al. v. BLM et al.*, No. 2:19-cv-00536-TS-PMW, 2020 U.S. Dist. LEXIS 61179 (D. Utah Apr. 6, 2020) (*Huck I*).

[7] *Huck I*, 2020 U.S. Dist. LEXIS 61179, at *5–6.

[8] *Id.* at *5.

[9] *See id.* at *4–6 (applying the Supreme Court's guidance in *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Plaintiffs renewed their efforts the following year, filing a new Complaint with many of the same allegations and causes of action as before.[10]  In effect, Plaintiffs primarily argued that Congress's designation of these wilderness areas and BLM's efforts to limit motor vehicle access violated valid rights-of-way that were first granted under an 1866 statute known as "R.S. 2477" and then later preserved by the Federal Land Policy Management Act of 1976.[11]  Plaintiffs also claimed these government actions violated the Establishment Cause because they "support and establish the Earth-religions and their tenets regarding the 'sacredness' of public lands."[12] And, repeating a claim from their first Complaint, Plaintiffs argued the Dingell Act and BLM restrictions violated due process and equal protection rights under the Fifth Amendment.[13] Moreover, Plaintiffs now alleged they abandoned a number of concrete plans to visit the newly designated wilderness areas during 2020 and 2021 because they feared prosecution.[14]

Despite these changes, the court once again dismissed Plaintiffs' claims for lack of standing—now focusing on the element of redressability.  In a decision by District Judge Tena Campbell, the court explained that its "determination of whether a portion of federal land is a valid R.S. 2477 right-of-way . . . is limited to actions under the Quiet Title Act (QTA)."[15]  To succeed under the QTA, the court noted, "[a] party . . . must assert title and provide proof for

---

[10] *See Complaint*, *Huck et al. v. United States et al.*, No. 2:21-cv-11-TC, 2022 U.S. Dist. LEXIS 131117 (D. Utah July 22, 2022) (*Huck II*) (*Huck II Complaint* filed Jan. 1, 2021).

[11] *See generally id.* at 10, 14, 22–30; *see also Defendants' Motion* at 3 (discussing the procedural history of Plaintiffs' lawsuits).

[12] *Huck II Complaint* at 22–23.

[13] *Id.* at 23–26.

[14] *Id.* at 8–9.

[15] *Huck II*, 2022 U.S. Dist. LEXIS 131117, at *6–7 (citing 28 U.S.C. § 2409a; *Kane Cnty. v. United States*, 333 F.R.D. 225, 230 (D. Utah 2019)).

each roadway."[16]  But Plaintiffs did "not bring a claim under the QTA (nor [did] they assert title

in any of the roads)."[17]  The court remarked that under Tenth Circuit case law, "members of the

public (such as [Plaintiffs]) do not hold such an interest, because '[m]embers of the public . . . do

not have a title in public roads.'"[18]  In its view, these deficiencies prevented Plaintiffs from

satisfying the redressability requirement for Article III standing:

> Although [Plaintiffs] do not expressly assert a claim under the Quiet Title Act, they
> seek a remedy only obtainable under the QTA: opening of R.S. 2477 roads on
> federal land that BLM has closed to motorized vehicles.  As members of the public,
> they are not entitled to that remedy, and because they cannot state a claim under the
> Quiet Title Act, they have no other recourse against the United States.[19]

Because "the court [did] not have authority to re-open the areas BLM [] closed to motor

vehicles," and "Plaintiffs [did] not allege facts that would give them standing to bring a cause of

action" under the QTA, Plaintiffs' claims were once again dismissed.[20]  Additionally, the court

concluded "[t]he fact that Plaintiffs' constitutional claims [were] one step removed from a QTA

claim does not expand the court's jurisdiction" or provide an end-run around its redressability

concerns.[21]

    On September 9, 2022, less than two months after their action was dismissed by

Judge Campbell, Plaintiffs filed their latest Complaint.  As before, Plaintiffs share their

concerns that "the elitist and selfish actions of 'Earth-religionist[]' organizations" have

---

[16] *Id.* at *7.

[17] *Id.* at *8.

[18] *Id.* at *9–10 (quoting *Kinscherff v. United States*, 586 F.2d 159, 159–60 (10th Cir. 1978)).

[19] *Id.* at *10 (internal quotation marks and citation omitted).

[20] *Id.* at *11–12.

[21] *Id.*

left some the United States' "most beautiful public lands . . . off-limits to most Americans, particularly . . . the aged, [] disabled, [and] handicapped."[22]  Though they abandon several Administrative Procedure Act (APA) claims from their earlier pleadings,[23] they reassert their constitutional claims based on the First Amendment's Establishment Clause and the Fifth Amendment's guarantees of due process and equal protection.[24]  Finally, Plaintiffs allege BLM exceeded its statutory authority, thereby "creating a land eating monster chewing up multiple use lands and spitting out nothing but Wilderness."[25]  In light of these contentions, Plaintiffs urge the court to declare the Dingell Act and motor vehicle restrictions, among other things, unconstitutional.[26]

Defendants now move to dismiss Plaintiffs' Complaint for failure to state a claim under Rule 12(b)(6).[27]  For the reasons discussed below, Defendants' Motion is GRANTED IN PART and DENIED IN PART.

## DISCUSSION

Recognizing "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it,"[28] the court first addresses the

---

[22] *Complaint* at 2.

[23] *Compare Huck I Complaint* at 18–20 (containing two causes of action based on the APA), *and Huck II Complaint* at 25–27 (same), *with Complaint* at 24–28 (asserting claims based on the Establishment Clause, Due Process Clause, and other constitutional grounds).

[24] *Complaint* at 24–28.

[25] *Id.* at 28–29.

[26] *See id.* at 24–31.

[27] *Defendants' Motion* at 2.

[28] *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).

jurisdictional issue that has precluded judicial review of Plaintiffs' claims: Article III standing.[29]
Because the previous standing deficiencies are now remedied for pleading purposes, the court
then evaluates the sufficiency of Plaintiffs' claims through the lens of Rule 12(b)(6).  For each
analysis, the court first discusses the governing legal standards before applying them to
Plaintiffs' Complaint.  In applying these steps, the court is mindful that Plaintiffs are proceeding
pro se and affords their Complaint a liberal construction.[30]  But the court does not act as their
advocate, and it applies the same procedural rules and substantive law as it would to a
represented party.[31]

## I.    Article III Standing

<u>Legal Standards</u>

The standing doctrine "aim[s] to ensure federal courts stay within Article III's bounds"
by limiting their review to actual cases or controversies.[32]  This limitation "'serves to prevent the
judicial process from being used to usurp the powers of the political branches,' . . . and confines
the federal courts to a properly judicial role."[33]  "Although the primary concern is jurisdictional,
the case-or-controversy requirement also protects the judicial economy, ensuring 'the scarce

---

[29] *See Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006) (explaining that courts "cannot reach the merits based on 'hypothetical standing,' any more than [they] can exercise hypothetical subject matter jurisdiction").

[30] *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[31] *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009).

[32] *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1159–60 (10th Cir. 2023) (discussing U.S. Const. art. III, § 2).

[33]  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Clapper v. Amnesty Int'l*, 568 U.S. 398, 408 (2013); *Lujan*, 504 U.S. at 576–77).

resources of the federal courts are devoted to those disputes in which the parties have a concrete stake.'"[34]

As the party invoking federal jurisdiction, Plaintiffs bear the burden of establishing standing for each of their claims and forms of relief sought.[35]  To do so, they must show they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[36]  Plaintiffs' burden at the motion to dismiss stage is not particularly onerous; "it is enough to *allege* the facts . . . establishing standing" and even "[g]eneral allegations suffice."[37]  In turn, the court assumes these allegations are true and considers whether the alleged facts sufficiently establish Plaintiffs' standing.[38]  At the motion to dismiss stage, "[t]he court only sets aside allegations that are legal conclusions, bare assertions of the legal elements of a claim, or sufficiently fantastic to defy reality as we know it."[39]

<u>Application</u>

As prefaced above, Plaintiffs' past two attempts to challenge the Dingell Act's new wilderness area designations and BLM's motor vehicle restrictions were both dismissed for lack of Article III standing.  The first attempt failed because of Plaintiffs' failure to satisfy the injury-

---

[34] *Rio Grande*, 57 F.4th at 1159 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000)).

[35] *Lujan*, 504 U.S. at 561.

[36] *Spokeo*, 578 U.S. at 338.

[37] *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1184 (10th Cir. 2015).

[38] *See Cressman v. Thompson*, 719 F.3d 1139, 1144 (10th Cir. 2013) ("When evaluating a plaintiff's standing at [the motion to dismiss] stage, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. . . . At this stage, the plaintiff's burden in establishing standing is lightened considerably." (internal quotation marks and citations omitted)).

[39] *Valdez v. NSA*, 228 F. Supp. 3d 1271, 1286 (D. Utah 2017).

in-fact requirement,[40] whereas their most recent attempt failed for lack of redressability.[41]

Though Defendants no longer challenge Plaintiffs' standing,[42] the court has "an independent

obligation to assure that standing exists, regardless of whether it is challenged by any of the

parties."[43]  Accordingly, the court starts with the question of whether Plaintiffs have sufficiently

demonstrated standing, with a particular focus on the two elements that were previously deemed

inadequate: injury-in-fact and redressability.

### A.  Injury in Fact

"To establish injury in fact, a plaintiff must show that he . . . suffered 'an invasion of a

legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not

conjectural or hypothetical.'"[44]  In Judge Stewart's Order dismissing Plaintiffs' claims for lack

of standing, the court remarked that Plaintiffs' alleged injuries were analogous to the "some day"

intentions deemed inadequate by the Supreme Court in *Lujan v. Defenders of Wildlife*.[45]  It

noted, "Absent from either the Complaint or the [] Memorandum in Opposition is any

description of concrete plans to visit the areas at issue.  Unlike the affiants in *Lujan*, Plaintiffs do

not even allege an intent to return to these areas."[46]  Without allegations of a concrete plan to

return or other definite injury, the court dismissed Plaintiffs' first action for lack of standing.[47]

---

[40] *See Huck I*, 2020 U.S. Dist. LEXIS 61179, at *5–6.

[41] *See Huck II*, 2022 U.S. Dist. LEXIS 131117, at *11–12.

[42] *See Defendants' Motion* at 3–4.

[43] *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).

[44] *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560).

[45] *See Huck I*, 2020 U.S. Dist. LEXIS 61179, at *5–6 (applying *Lujan*, 504 U.S.at 563–64).

[46] *Id.* at *5.

[47] *Id.* at *5–6.

In their current Complaint, Plaintiffs clarify—as they did in their second attempt—that the wilderness designations and accompanying land use restrictions forced them to forgo several plans to visit the protected areas over the past two years.[48]  In particular, Huck contends his fear of "civil or criminal penalties" forced him to abandon an annual off-road motorcycle trip through Utah's public lands during the summer of 2021.[49]  And Anderson urges the court to lift the motor vehicle restrictions because his "age and health conditions" limit his ability to visit the wilderness areas without a motorized vehicle.[50]

In their latest Complaint, Plaintiffs allege, among other things, that BLM has erected physical barricades preventing them from accessing certain roadways and deliberately damaged some roads, thereby hindering their planned excursions.[51]  In that sense, this case is like *Gardner v. Mutz*,[52] where the Eleventh Circuit considered plaintiffs' standing to challenge the relocation of a Confederate memorial.  As with Huck and Anderson, the *Gardner* plaintiffs first alleged injuries that were "simply too 'abstract' to implicate Article III," including their interests in "preserving the history of the south" and "protecting and preserving Memorials to American veterans."[53]  The Eleventh Circuit concluded these alleged injuries were neither "concrete nor particularized," and therefore fell short of the injury-in-fact requirements.[54]  On remand, the plaintiffs remedied their deficient pleadings by adding allegations that they visited the monument

---

[48] *Huck II Complaint* at 7–9; *Complaint* at 8–11.

[49] *Complaint* at 9.

[50] *Id.* at 10.

[51] *See Complaint* at 19–22.

[52] 962 F.3d 1329 (11th Cir. 2020) (*Garner I*).

[53] *Id.* at 1341.

[54] *Id.* at 1343–44.

regularly, had plans to visit the monument again, and that the relocation of the memorial obstructed their plans.[55]  In revisiting the plaintiffs' standing, the Eleventh Circuit concluded these "newly alleged injuries [were] sufficiently 'concrete' and 'particularized' to meet Article III's demands."[56]

As with the plaintiffs in *Gardner*, Huck and Anderson have bolstered their Complaint with allegations that they regularly went off-roading through the designated wilderness areas and have been forced to abandon concrete plans because of Congress's new designations and BLM's motor vehicle restrictions.[57]  On balance, the court concludes "[t]hese are the sorts of [] injuries that were missing in [Plaintiffs' earlier cases] and that are concrete for Article III purposes."[58]  They are also particularized as they injure only those people with plans to drive motor vehicles through newly designated public lands, rather than the undifferentiated public.[59]  Accordingly, the court concludes Plaintiffs have sufficiently alleged an injury-in-fact for Article III purposes.[60]

---

[55] *Gardner v. Mutz*, 857 F. App'x 633, 634 (11th Cir. 2021) (*Garner II*).

[56] *Id.* at 636 (quoting *Lujan*, 504 U.S. at 562–63).

[57] *Complaint* at 9–11, 19–22.

[58] *Gardner II*, 857 F. App'x at 635.

[59] *See id.*

[60] In their Complaint, Plaintiffs also appear to advance a standing theory based on "fear of prosecution."  *See Complaint* at 9–10, 22–23.  The Tenth Circuit applies the standing requirements "somewhat more leniently" in the First Amendment context, allowing plaintiffs to show standing "by alleging an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder."  *Peck v. McCann*, 43 F.4th 1116, 1129–30 (10th Cir. 2022) (internal quotation marks and citations omitted).  But the court is not aware of any Tenth Circuit decisions extending the "fear of prosecution" approach to claims brought outside the free speech or free exercise context, such as Plaintiffs' Fifth Amendment due process and equal protection claims, or claims brought squarely under the Establishment Clause.  *See id.* (discussing the purpose of the "fear of prosecution" approach to standing).  Accordingly, the court does not address this theory, and instead focuses on the more concrete injuries discussed above.

### B. Causation

To satisfy the second requirement of standing, a plaintiff must show its injuries are fairly traceable to the defendant's alleged violations and not "the result of the independent action of some third party not before the court."[61]  Here, Plaintiffs sufficiently allege their injuries resulted from Congress's designation of former off-roading destinations as wilderness areas and the motor vehicle restrictions that followed.[62]

### C. Redressability

For the third standing requirement, redressability, Plaintiffs must establish that their injuries would likely be redressed by a favorable decision.[63]  Requested "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement."[64]

As prefaced above, Plaintiffs' second action was dismissed because the court found they could not satisfy the redressability requirement for their claims.  As Defendants explain, "Plaintiffs made clear that they were challenging their inability to access R.S. 2477 roadways."[65]  Because "[a] court's determination of whether a portion of federal land is a valid R.S. 2477 right-of-way (and, accordingly, available to motorists such as [] Huck and [] Anderson) is limited to actions under the Quiet Title Act," the court analyzed Plaintiffs' standing through the lens of the

---

[61] *Lujan*, 504 U.S. at 560.

[62] *See generally Complaint* at 12–24.

[63] *See Laidlaw*, 528 U.S. at 181.

[64] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

[65] *Defendants' Motion* at 3 (discussing the procedural history of Plaintiffs' challenges).

QTA.[66]  "As members of the public," the court noted Plaintiffs were "not entitled to [the] remedy [they sought]" and could not state a claim under the QTA.[67]  Therefore, Plaintiffs' claims were dismissed for lack of standing.

In their latest briefing, Plaintiffs clarify they are not asserting a right to travel by motorized means on R.S. 2477 roadways.[68]  Instead, they are asking the court to declare the Dingell Act and BLM motor vehicle restrictions unlawful or unconstitutional and to enjoin Defendants from "closing roads, trails, and access to areas previously available to mechanized or motorized travel."[69]  This is a tall order to be sure; Congress has broad authority to manage the lands owned by the federal government, and most of the government actions Plaintiffs challenge are Congressional dictates.[70]  But an action does not fail for lack of standing simply because the plaintiff's theory is novel or far-fetched.[71]  As the Tenth Circuit cautions, this would "put the merits cart before the standing horse."[72]  At the pleading stage, Plaintiffs need establish only that their injuries "can *likely* be ameliorated by a favorable decision."[73]  Further afield, other courts

---

[66] *Huck II*, 2022 U.S. Dist. LEXIS 131117, at *6–7.

[67] *Id.* at 12.

[68] *See* Dkt. 17, *Plaintiffs' Opposition to the United States' Motion to Dismiss* at 4.

[69] *See Complaint* at 24–29.

[70] *See generally id.* (challenging, among other things, the Dingell Act and 18 U.S.C. § 1133(c)).

[71] *See Steel Co.*, 523 U.S. at 89, 95–96; *see also Valdez*, 228 F. Supp. 3d at 1281–86 (concluding Plaintiffs' allegations, which "may strike some as incredible," nevertheless "plausibly alleged a continuing injury capable of redress" at the lenient motion to dismiss stage).

[72] *Initiative & Referendum Inst.*, 450 F.3d at 1093 ("In reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims." (quoting *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003))).

[73] *S. Utah Wilderness All. v. Office of Surface Mining Reclamation & Enf't*, 620 F.3d 1227, 1233 (10th Cir. 2010) (emphasis added); *see also Petrella v. Brownback*, 697 F.3d 1285, 1295 (10th Cir. 2012) ("The standing inquiry, at the motion to dismiss stage, asks only whether the plaintiff has sufficiently alleged a cognizable injury, fairly traceable to the challenged conduct that is likely to be redressed by a favorable judicial decision.").

have noted the plaintiff's burden of establishing redressability is "relatively modest"[74] and

"where an injury is traceable to a defendant's conduct, it is usually redressable as well."[75]

Here, a favorable decision would effectively vitiate the Dingell Act's 2019 wilderness

area designations, reverting Plaintiffs' backcountry destinations to their pre-designation status.

Similarly, the court could strike down the motor vehicle restrictions as unlawful or

unconstitutional, enabling Plaintiffs to go on their planned excursions without fear of penalty or

restriction.  Finally, the court has the power to enjoin BLM from pursuing an unconstitutional

policy or program.  If granted, these favorable outcomes would likely redress Plaintiffs' alleged

injuries, which is enough to satisfy the redressability requirement at this stage of the litigation,[76]

though, of course, much remains to be said about the merits of Plaintiffs' claims.

In sum, Plaintiffs have sufficiently alleged that they suffer from redressable injuries that

are fairly traceable to the Dingell Act and BLM motor vehicle restrictions.  Therefore, the court

next turns to the substance of Defendants' Motion.

---

[74] *S. River Watershed All., Inc. v. Dekalb Cnty.*, 69 F.4th 809, 820 (11th Cir. 2023) ("At the motion to dismiss stage, the burden to prove redressability is 'relatively modest.'" (quoting *Bennett v. Spear*, 520 U.S. 154, 171 (1997))); *Renee v. Duncan*, 686 F.3d 1002, 1013 (9th Cir. 2012).

[75] *Missouri v. Biden*, No. 3:22-CV-01213, 2023 U.S. Dist. LEXIS 46918, at *68-69 (W.D. La. Mar. 20, 2023) (collecting cases).

[76] *Cf. Brown v. Herbert*, 850 F. Supp. 2d 1240, 1252 (D. Utah 2012) ("Because Plaintiffs seek not only a ruling that [the state] Statute is unconstitutional, but also seek to enjoin its enforcement . . . and, because such an injunction would relieve Plaintiffs' threat of prosecution, the redressability prong is met."); *Petrella*, 697 F.3d at 1296 (explaining that appellants had standing "because, under the lenient standard applicable at [the pleading] stage of the litigation, they [] alleged a violation of their right to equal protection that [was] fairly traceable to the challenged statute, and which would be redressed by a favorable decision on the merits, even if such a decision resulted in the wholesale invalidation of the [challenged statute]").

## II.        Failure to State a Claim

<u>Legal Standards</u>

As discussed, filings from pro se litigants are to be "construed liberally."[77]  Construing liberally allows the court to "reasonably" read a pro se pleading as stating a valid claim when there are deficiencies such as "the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."[78]  However, a pro se "plaintiff still has 'the burden of alleging sufficient facts on which a recognized legal claim could be based.'"[79]  And the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on [his] behalf."[80]

Under Rule 12(b)(6), a cause of action that "fail[s] to state a claim upon which relief can be granted" must be dismissed.[81]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[82]  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[77] *Hall*, 935 F.2d at 1110.

[78] *Id.*

[79] *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (quoting *Hall*, 935 F.2d at 1110).

[80] *Smith*, 561 F.3d at 1096 (internal quotation marks and citation omitted).

[81] Fed. R. Civ. P. 12(b)(6).

[82] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

alleged."[83]  While plausibility does not equate to probability, it "asks for more than a sheer possibility that a defendant has acted unlawfully."[84]

When evaluating a Rule 12(b)(6) motion to dismiss, "all well-pleaded facts [are accepted] as true and view[ed] . . . in the light most favorable to the plaintiff."[85]  In doing so, the court will not "weigh potential evidence that the parties might present at trial, but [will] assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[86]  "Though a complaint need not provide detailed factual allegations, it must give just enough factual detail to provide [the defendant] fair notice of what the . . . claim is and the grounds upon which it rests."[87]  It also "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[88]

Application

### A.  Establishment Clause Claim

Plaintiffs first contend the Dingell Act's wilderness area designations and the accompanying restrictions on motor vehicle access run afoul of the Establishment Clause,[89] alleging the "designation of additional 'wilderness' areas [was] done to support and establish the Earth-religions and their tenets regarding the 'sacredness' of public lands."[90]  Defendants

---

[83] *Id.*

[84] *Id.*

[85] *Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011) (citation omitted).

[86] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[87] *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[88] *Iqbal*, 556 U.S. at 678.

[89] *Complaint* at 24–26.

[90] *Id.* at 25.

counter that "Plaintiffs have not alleged any facts supporting their claim that wilderness designations are related to any cohesive organization or belief structure devoted to wilderness."[91] As such, they maintain that Plaintiffs' Establishment Clause challenge should be dismissed for failure to state a plausible claim for relief.[92]

The First Amendment provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."[93] This "mandate[s] governmental neutrality between religion and religion, and between religion and nonreligion."[94] In recent years, the court might have evaluated Plaintiffs' Establishment Clause challenge under the *Lemon* test, which asks, among other things, "whether a 'reasonable observer' would consider the government's challenged action an 'endorsement' of religion."[95] But the Supreme Court "essentially eviscerated" the *Lemon* test last year,[96] and now directs courts to consider Establishment Clause challenges with "reference to historical practice and understandings."[97] Under that approach, "[t]he line that courts . . . 'must draw between the permissible and impermissible' has to 'accord with history and faithfully reflect the understanding of the Founding Fathers.'"[98]

---

[91] *Defendants' Motion* at 6.

[92] *Id.*

[93] U.S. Const. amend. I.

[94] *O'Connor v. Washburn Univ.*, 416 F.3d 1216, 1223 (10th Cir. 2005).

[95] *See Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2414 (2022) (discussing the adoption of the test articulated by *Lemon v. Kurtzman*, 403 U.S. 602, 611–14 (1971) and quoting *Cnty. of Allegheny v. ACLU*, 492 U.S. 573, 593 (1989)).

[96] *Pendleton v. Jividen*, No. 2:22-cv-00178, 2023 U.S. Dist. LEXIS 47505, at *27 (S.D. W. Va. Mar. 21, 2023) (discussing *Kennedy*, 142 S. Ct. 2407).

[97] *Kennedy*, 142 S. Ct. at 2428 (quoting *Town of Greece v. Galloway*, 572 U.S. 565, 576 (2014)).

[98] *Id.* (quoting *Town of Greece*, 572 U.S. at 577) (further quotation marks and citation omitted).

Given the recency of the *Kennedy v. Bremerton School District*[99] decision, there is limited case law interpreting and applying the Supreme Court's new standard, particularly in the context of Rule 12(b)(6) motions to dismiss. However, the general consensus appears to be that "[f]rom now on, historical practice and understanding 'must' play a central role in teasing out what counts as an establishment of religion."[100] When the challenged government action has substantial legal authority and falls outside the realm of actions the Establishment Clause was meant to prevent, district courts have resoundingly dismissed plaintiffs' challenges for failure to state a claim.[101]

Recognizing these are relatively unchartered waters, the court considers Plaintiffs' challenge with an eye toward the historical practice and understanding of the Establishment Clause and federal public lands management. While the concept of designated wilderness areas and motor vehicles might have seemed outlandish to the Founding Fathers, there is substantial legal authority supporting the federal government's historically broad authority to designate

---

[99] 142 S. Ct. 2407 (2022).

[100] *Firewalker-Fields v. Lee*, 58 F.4th 104, 122 (4th Cir. 2023); *see also Mohamed Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 888 (9th Cir. 2022) ("Going forward, the line that courts and governments must draw between the permissible and the impermissible has to accord with history and faithfully reflect the understanding of the Founding Fathers." (internal quotation marks and citation omitted)).

[101] *See, e.g.*, *Wisdom Ministries, Inc. v. Garrett*, No. 22-CV-0477-CVE-CDL, 2023 U.S. Dist. LEXIS 132834, at *19–24 (N.D. Okla. Aug. 1, 2023) (dismissing a challenge to an accreditation requirement for degree-granting institutions, noting "[s]tates have historically had the authority to regulate colleges and universities within their borders, whether religious or secular in nature"); *Pendleton*, 2023 U.S. Dist. LEXIS 47505, at *32 (dismissing challenge to the state prison system's religious special diet policy because the plaintiff failed to establish "the policy in question [was] not administered in a neutral and non-coercive manner to sufficiently state a violation of the Establishment Clause as it has been historically applied"); *Kane v. de Blasio*, 623 F. Supp. 3d 339, 358–59 (S.D.N.Y. 2022) (dismissing an Establishment Clause challenge to New York's vaccine mandate after reviewing the "long history of vaccination requirements in this country and in this Circuit").

public lands and restrict the public's access to them.[102]  These actions, without more, do not raise

the specter of government coercion of religious practices or observances.[103]  Congress's re-

designation of Plaintiffs' off-roading destinations might have been frustrating to them, but they

have not alleged they were compelled to follow a specific practice or observe any religious

tradition based on "a historically sensitive understanding of the Establishment Clause."[104]

Similarly, Plaintiffs have not plausibly alleged BLM's motor vehicle restrictions violate

"governmental neutrality between religion and religion, and between religion and

nonreligion."[105]

On balance, the court concludes Plaintiffs' allegations do not clear the threshold for

stating a plausible claim under *Kennedy*.  Though Plaintiffs are not the first litigants to raise an

Establishment Clause challenge based on the advancement of "Gaia" or "Mother Earth"

worship,[106] they fail to connect the dots between the challenged government actions and the

alleged establishment of Earth religions.[107]  Nor have they alleged that the challenged

government actions compel their adherence to a recognized belief or practice with an eye toward

---

[102] *See generally* John D. Leshy, *Our Common Ground: A History of America's Public Lands* (2022) (discussing the emergence and development of public land law in the United States from the founding to the present); Michael P. Dombeck et al., *From Conquest to Conservation: Our Public Lands Heritage* (2013); *see also Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 581 (1987) (explaining "the Property Clause gives Congress plenary power to legislate the use of [] federal land" (discussing U.S. Const. art. IV, § 3, cl. 2)).

[103] *Cf. Kennedy*, 142 S. Ct. at 2428–29 (collecting cases focused on the "original meaning and history" of the Establishment Clause and discussing the type of coercion that "was among the foremost hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment").

[104] *Id.* at 2428–29.

[105] *O'Connor*, 416 F.3d at 1223.

[106] *See, e.g.*, *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 77 (2d Cir. 2001) (concluding that "an objective observer similarly would not view [a public school district's] Earth Day ceremonies as endorsing Gaia or Earth worship as a religion").

[107] *See Complaint* at 2, 6–7, 24–26 (reflecting Plaintiffs' conclusory allegation that congressional and executive public lands decisions are made to "support and establish the Earth-religions and their tenets").

the historical practice and understanding of the Establishment Clause.  "Supreme Court precedent makes clear that the Establishment Clause is not transgressed merely because a [government action] either is in agreement with, or is in disagreement with, a religious tenet."[108] Under a traditional view of the Establishment Clause, the court therefore concludes Plaintiffs' threadbare allegations of governmental advancement of Earth religions fail to sustain a plausible claim for relief.  Accordingly, their Establishment Clause claim is dismissed.

### B. *Procedural Due Process Claim*

Plaintiffs next assert that Congress's wilderness area designations and the concomitant motor vehicle restrictions violated their procedural due process rights by, among other things, "denying [them] . . . any real input or ability to protect their interests in the decision-making process regarding the designation of wilderness areas."[109]  In particular, they allege they were "ridiculed . . . and marginalized" at local public lands council meetings and that the unfavorable "outcome [was] pre-ordained."[110]  Defendants counter that, by Plaintiffs' own admission, they were able to "engage[] in the public process, . . . and [] continue to have recourse through the legislative and electoral process," thus satisfying their due process rights.[111]

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."[112]  To state a procedural due process claim, a plaintiff must plead two elements: "(1) a constitutionally protected liberty or

---

[108] *Altman*, 245 F.3d at 78.

[109] *Complaint* at 27.

[110] *Id.*

[111] *Defendants' Motion* at 7–8.

[112] U.S. Const. amend. V.

property interest, and (2) a governmental failure to provide an appropriate level of process."[113] Plaintiffs fail on both accounts.

i.     *Protected Liberty or Property Interest*

Though Plaintiffs do not specify which liberty or property interest was undermined by the government's actions, the court discerns two possibilities from the face of their Complaint—both of which are unavailing.[114]

First, Plaintiffs contend they were deprived of "reasonable access to scenic and recreational areas" because they are elderly and disabled, and therefore unable to traverse large distances without motor vehicles.[115]  But it is important to note that not every government restriction triggers constitutional protection.  Though Plaintiffs clearly disagree with Congress's wilderness area designations and the motor vehicle restrictions, they do not have an unfettered right to use motor vehicles on public lands.  As the court pointed out during Plaintiffs' previous lawsuit, "members of the public (such as [] Huck and [] Anderson) do not hold . . . an interest" in the "right to use a particular road on federal land."[116]  Similarly, courts have observed that "citizens generally don't have a property interest in using a park or controlling how it's used."[117] "To have a property interest in a benefit," such as the use of motor vehicles on public lands, "a person clearly must have more than an abstract need or desire for it. . . . He must, instead, have a

---

[113] *Citizen Ctr. v. Gessler*, 770 F.3d 900, 916 (10th Cir. 2014).

[114] *See Hall*, 935 F.2d at 1110 (discussing courts' responsibility to liberally construe pro se pleadings).

[115] *Complaint* at 27.

[116] *Huck II*, 2022 U.S. Dist. LEXIS 131117, at *9–10 (citing *Kinscherff*, 586 F.2d at 159–60).

[117] *Friends of Blue Mound State Park v. Wis. Dep't of Nat. Res.*, No. 21-cv-676-JDP, 2023 U.S. Dist. LEXIS 17507, at *35 (W.D. Wis. Feb. 2, 2023) (citing *Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 737 (7th Cir. 2020)).

legitimate claim of entitlement to it."[118]  Because Plaintiffs' "reasonable access to scenic and recreational areas" falls short of this threshold, it is not a property interest that can sustain their due process claim.[119]

Plaintiffs also fall short of alleging a recognized liberty interest for the purpose of procedural due process.  "To assert a liberty interest protected by the due process clause, the plaintiff must show 'a present and legally recognized substantive entitlement' rather than a 'judicially unenforceable substantial hope.'"[120]  In the instant case, Plaintiffs contend they have been denied the right to use motor vehicles on public roadways and thereby access "scenic and recreational areas" that are still accessible to the "able-bodied" who can hike to them.[121]  But while the Supreme Court and Tenth Circuit have recognized a fundamental right to certain types of travel,[122] there is no "constitutional right to the most convenient form of travel" or even the most enjoyable.[123]  Moreover, "[t]his court has not been provided with any authority to extend that right to travel to protect a right to movement generally,"[124] such as a right to access all

---

[118] *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

[119] *See, e.g.*, *Brown v. Mich. City*, No. 3:02-CV-572 RM, 2005 U.S. Dist. LEXIS 20447, at *13-15 (N.D. Ind. Sept. 19, 2005) (holding that plaintiff had no "constitutionally protected property interest in a parking pass or his ability to enter public parks in Michigan City"); *Baker v. Dep't of Env't Conservation*, 634 F. Supp. 1460, 1466–67 (N.D.N.Y. 1986) (holding plaintiffs did not have a protectible property interest in operating aircraft in Adirondack State Park); *see also Pub. Lands for the People, Inc. v. U. S. Dep't of Agric.*, 733 F. Supp. 2d 1172, 1193 (E.D. Cal. 2010) (collecting cases "reason[ing] that the right to use a public road is not itself a right or interest in property").

[120] *JLPR, LLC v. Utah Dep't of Agric. & Food*, No. 2:21-CV-436 TS, 2022 U.S. Dist. LEXIS 111730, at *7 (D. Utah May 16, 2022) (quoting *Kerry v. Din*, 576 U.S. 86, 98 (2015)).

[121] *Complaint* at 27.

[122] *See Maehr v. U. S. Dep't of State*, 5 F.4th 1100, 1117–21 (10th Cir. 2021) (discussing the development and latest status of the constitutional right to travel).

[123] *Am. Whitewater v. Tidwell*, 959 F. Supp. 2d 839, 865 (D.S.C. 2013) (rejecting plaintiffs' contention that a federal restriction on rafting the Chattooga River violated procedural due process, quoting *Cramer v. Skinner*, 931 F.2d 1020 (5th Cir. 1991)).

[124] *Yussuf Awadir Abdi v. Wray*, No. 2:17-cv-622-DB, 2018 U.S. Dist. LEXIS 68942, at *7 (D. Utah Apr. 20, 2018).

"scenic and recreational areas."  On the contrary, the weight of authority suggests minor restrictions on travel, such as the ability to use a specific mode of transportation on a limited number of roads, do not amount to the denial of a liberty interest.[125]  In the absence of any legal precedent recognizing "reasonable access to scenic and recreational areas" or any similar formulation as a cognizable liberty interest, the court concludes this basis does not sustain Plaintiffs' procedural due process claim.[126]

Second, Plaintiffs contend they have been denied "any real input or ability to protect their interests in the decision-making process regarding the designation of wilderness areas."[127]  This amounts to an alleged deprivation of process or procedure.  But, as the Tenth Circuit explains, "an entitlement to nothing but procedure cannot be the basis for a liberty or property interest."[128]  "This is because '[p]rocess is not an end in itself,' but [] serves only 'to protect a substantive interest to which the individual has a legitimate claim of entitlement.'"[129]  By extension, "[i]ndividuals have no right or interest in having the government conform to 'fair' procedures in the abstract."[130]  As such, Plaintiffs' second basis for their procedural due process claim also

---

[125] *See, e.g.*, *Fruitts v. Union Cnty.*, No. 2:14-CV-00309-SU, 2015 U.S. Dist. LEXIS 119796, at *16–21 (D. Or. Aug. 17, 2015) (collecting cases holding that deprivation of "a specific mode of travel along a specific route" does not implicate a liberty interest protected by due process); *Baker*, 634 F. Supp. at 1466–67 (concluding plaintiffs were not deprived of a liberty interest because they could continue to "operate . . . motor vehicles and vessels in [areas] . . . not designated as wilderness").

[126] *Cf. Baker*, 634 F. Supp. at 1467 ("[A]n interest in utilizing motorized transportation in the wilderness is not a fundamental right.").

[127] *Complaint* at 27.

[128] *Stein v. Disciplinary Bd. of Sup. Ct. of N.M.*, 520 F.3d 1183, 1192 (10th Cir. 2008) (quoting *Teigen v. Renfrow*, 511 F.3d 1072, 1081 (10th Cir. 2007)).

[129] *Teigen*, 511 F.3d at 1080–81 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983)).

[130] *Randall v. Norton*, No. 00-349 MV/RHS, 2004 U.S. Dist. LEXIS 29870, at *36 (D.N.M. Apr. 19, 2004) (dismissing procedural due process claim where plaintiffs challenged that the National Park Service's restriction on rafting along a river coordinator stemmed from its "failure to follow [its own] rules, regulations, and procedures," but failed to assert a cognizable liberty or property interest).

falls outside the realm of protected property or liberty interests, and thus does not warrant any additional process.[131]

###### ii.     *Appropriate Level of Process*

But even if Plaintiffs established some deprivation of their liberty or property interests, they have nonetheless failed to properly allege a lack of process.  At the outset, it is far from certain that the Dingell Act and concomitant motor vehicle restrictions even require any additional processes aside from the usual rigors of lawmaking.  As a sister court recently observed, "governmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional due process of individual notice and hearing; general notice as provided by law is sufficient."[132]

Regardless, "the essence of procedural due process is that the parties be given notice and opportunity for a hearing."[133]  By Plaintiffs' own account, they were apprised of the adverse decisions and had the opportunity to attend multiple hearings before the designation.[134]  While they offer vague, conclusory statements about fellow off-road activists' treatment at these

---

[131] *See United States v. Buck*, 281 F.3d 1336, 1345 (10th Cir. 2002) ("[N]o process is required for government actions which do not deprive an individual of . . . life, liberty, or property." (internal quotation marks and citations omitted)).

[132] *ETP Rio Rancho Park, LLC v. Grisham*, 564 F. Supp. 3d 1023, 1078–79 (D.N.M. 2021) (quoting *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1261 (9th Cir. 1994)); *see also Okla. Educ. Ass'n v. Alcoholic Beverage Laws Enf't Comm'n*, 889 F.2d 929, 936 (10th Cir. 1989) ("When the legislature passes a law which affects a general class of persons, those persons have all received procedural due process—the legislative process.").

[133] *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 325 (10th Cir. 1984); *see also Christian v. Nielsen*, No. CIV-17-1227-SLP, 2018 U.S. Dist. LEXIS 242367, at *17 (W.D. Okla. May 14, 2018) ("To meet the requirements of procedural due process, an agency need only provide 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976))).

[134] *See generally Complaint* at 26–28.

hearings,[135] they do not point to any specific deficiencies or processes that were not provided—rather, they conclude "the outcome [was] pre-ordained."[136]  But though "[a] citizen is entitled to process," he is "not necessarily guaranteed a win."[137]  Because Plaintiffs' Complaint does not assert any specific deficiencies with the process afforded by the government, they fail to sufficiently state a procedural due process claim.[138]

In sum, Plaintiffs' procedural due process claim fails because they do not allege the deprivation of a recognized liberty or property interest or articulate what process was lacking. Indeed, Plaintiffs' Complaint suggests they had the opportunity to attend multiple hearings—part of the "essence of procedural due process"[139]—well before the wilderness area designations and motor vehicle restrictions were finalized.  Accordingly, Plaintiffs' procedural due process claim is dismissed.

### C. Equal Protection Claim

Plaintiffs next raise an equal protection claim under the Fifth Amendment,[140] asserting that Congress's wilderness area designations and the consequent motor vehicle restrictions

---

[135] *See id.* (stating Anderson was "ridiculed . . . and marginalized" at the hearings and "[e]very other advocate for motorized access [was] . . . similarly treated").

[136] *Id.* at 27.

[137] *Salazar v. City of Albuquerque*, 776 F. Supp. 2d 1217, 1239 (D.N.M. 2011).

[138] *See Petersen v. Garcia*, No. 22-cv-00797-NYW-NRN, 2023 U.S. Dist. LEXIS 69425, at *33-34 (D. Colo. Apr. 20, 2023) (explaining a procedural due process claim fails when the plaintiff does not "articulate what process [he] was due and deprived of"); *see also Quinn v. Bd. of Cnty. Comm'r*, No. 13-cv-02818-CMA-BNB, 2014 U.S. Dist. LEXIS 136107, at *10 (D. Colo. Sep. 26, 2014) (dismissing a procedural due process claim where plaintiffs left the court "in the dark as to whether there was any sort of process . . . and if so, why this process was insufficient").

[139] *Jones*, 741 F.2d at 325.

[140] As a preliminary matter, the court notes that "[w]hile the Fifth Amendment contains no equal protection clause, the equal protection standards of the Fourteenth Amendment are incorporated into the Fifth Amendment's promise of due process." *United States v. McHorse*, 179 F.3d 889, 897 n.1 (10th Cir. 1999); *see also Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 217–18 (1995).

discriminate against them and others who are "aged, handicapped and disabled."[141]  The United States counters that Plaintiffs fail to overcome the presumption of rationality that applies to the challenged government actions.[142]

"Equal protection requires the laws to afford similarly situated people like treatment."[143] Yet, as the United States points out, "equal protection of the laws doesn't guarantee equal results,"[144] nor does it "suggest that the law may never draw distinctions."[145]  Indeed, "many laws, . . . often unavoidably, [a]ffect some groups of persons differently than others even though they involve no *intentional* discrimination."[146]  "A neutral law that disproportionately impacts a [group] does not violate equal protection . . . unless that impact can be traced to a discriminatory purpose."[147]  And, even if the challenged law is not facially neutral, "unless [it] . . . either burdens a fundamental right or targets a suspect class, it need only bear a 'rational relation to some legitimate end' to comport with equal protection."[148]

Because the challenged government actions are facially neutral, Plaintiffs must take the additional step of alleging a discriminatory intent to withstand Defendants' Rule 12(b)(6)

---

[141] *Complaint* at 26–28.

[142] *Defendants' Motion* at 8–9.

[143] *Greer v. Herbert*, No. 2:16-cv-01067, 2018 U.S. Dist. LEXIS 78323, at *22 (D. Utah May 8, 2018) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)), *aff'd*, 768 F. App'x 787 (10th Cir. 2019).

[144] *Defendants' Motion* at 9 (citing *SECSYS, LLC v. Vigil*, 666 F.3d 678, 684–85 (10th Cir. 2012)).

[145] *SECSYS*, 666 F.3d at 684.

[146] *Id.* at 685.

[147] *United States v. Williams*, 45 F.3d 1481, 1486 (10th Cir. 1995) (quoting *United States v. Thurmond*, 7 F.3d 947, 953 (10th Cir. 1993)); *see also Greer*, 2018 U.S. Dist. LEXIS 78323, at *22–23 (applying the same principle to the context of disabled persons).

[148] *White v. Colorado*, 157 F.3d 1226, 1234 (10th Cir. 1998) (quoting *Romer v. Evans*, 517 U.S. 620, 631 (1996)).

challenge.[149]  However, they fail to do so.  Instead, they simply allege that the challenged actions disproportionately impact elderly and disabled persons such as themselves by limiting their access to public lands.[150]  But "[d]isparate impact . . . is not necessarily the same thing as discriminatory intent."[151]

Though Plaintiffs speculate that "[t]he BLM (as well as other . . . agencies) [conspired] with Earth-religionists [to] . . . deprive the aged, disabled or handicapped . . . from being able to access and travel upon many of the public lands,"[152] these conclusory allegations—or speculations—fall short of satisfying Plaintiffs' burden of alleging that the challenged actions were driven by discriminatory intent.[153]  On the contrary, Plaintiffs stress that the Dingell Act and motor vehicle restrictions were the result of the Earth-religionists' efforts to "preserve and protect 'Gaia' or 'Mother Earth,'" rather than an attempt to hinder the elderly or disabled.[154]  In other words, the disproportionate impact on elderly and disabled motorists such as Plaintiffs was

---

[149] *See Williams*, 45 F.3d at 1486; *see also Greer*, 2018 U.S. Dist. LEXIS 78323, at *23 (dismissing an equal protection claim because the plaintiff did "not allege any discriminatory purpose" for a facially neutral prostitution law).

[150] *Complaint* at 26–28.

[151] *SECSYS*, 666 F.3d at 686.

[152] *Complaint* at 16.

[153] *See Watson*, 857 F.2d at 694 ("A plaintiff in an equal protection action has the burden of demonstrating discriminatory intent."); *Webb v. Swensen*, No. 1:14-cv-00148-DB-DBP, 2016 U.S. Dist. LEXIS 38163, at *16 (D. Utah Feb. 23, 2016) ("In addition to discriminatory effect, a plaintiff in an equal protection suit must allege that discriminatory intent motivated the defendant's actions."), *report and recommendation adopted by* 2016 U.S. Dist. LEXIS 37277 (D. Utah Mar. 22, 2016)); *see also Greer*, 2018 U.S. Dist. LEXIS 78323, at *22–23 (noting that, even at the motion to dismiss stage, "any discriminatory purpose would need to support the [] contention that [the legislature enacted the challenged statute] 'because of, not merely in spite of' the law['s] adverse effects on the disabled" (quoting *Thurmond*, 7 F.3d at 952)).

[154] *Complaint* at 24.

a byproduct, rather than goal, of the Earth-religionists and their government actors.[155]  As the

Tenth Circuit acknowledges, "a discriminatory effect against a group or class may flow from

[government] action, it may even be a foreseen (or known) consequence . . . , but it does not run

afoul of the Constitution unless it is an intended consequence of [government] action."[156]

Accordingly, Plaintiffs' claim fails because they have not plausibly alleged that the Dingell Act

and motor vehicle restrictions were enacted "because of, not merely in spite of, [their] adverse

effects on the disabled [or elderly]."[157]

But Plaintiffs' equal protection claim suffers from other fatal flaws as well.  Because they

are challenging a statute and restrictions that "[n]either burden[] a fundamental right [n]or

target[] a suspect class," they must contend with the highly deferential rational basis standard.[158]

Under the rational basis standard, Plaintiffs' claim will fail "if there is any reasonably

conceivable state of facts that could provide a rational basis for the classification."[159]  Plaintiffs

do not overcome this threshold.  Instead, they challenge Defendants' stated reasons for the

wilderness area designations and motor vehicle restrictions as "contrived and/or pretextual."[160]

---

[155] *Id.*; *see also id.* at 16 (speculating government actions were taken "with malice at worst and indifference at best" toward "the aged, disabled, or handicapped").

[156] *SECSYS*, 666 F.3d 678, 685.

[157] *Greer*, 2018 U.S. Dist. LEXIS 78323, at *22–23 (quoting *Thurmond*, 7 F.3d at 952).

[158] *White*, 157 F.3d at 1234.

[159] *Carney v. Okla. Dep't of Pub. Safety*, 875 F.3d 1347, 1353 (10th Cir. 2017) (quoting *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)).

[160] *Complaint* at 7, 20.  Though they do not have the burden of presenting the grounds for the challenged government actions at this juncture, Defendants assert that they are rationally related to the legitimate purpose of managing and protecting the natural resources of the United States, as well as preserving federal lands.  *See Defendants' Motion* at 8–10.

But these conclusory allegations do not "overcome the presumption of rationality" behind the challenged actions.[161]  Accordingly, Plaintiffs' equal protection claim is dismissed.

### D.  Challenge to Agency Authority

As a final matter, Plaintiffs urge the court to declare that "BLM has exceeded the Authorities Granted by Congress," citing to the recent Supreme Court case *West Virginia v. Environmental Protection Agency*.[162]  In *West Virginia*, the Supreme Court considered a challenge to the EPA's authority to broadly regulate greenhouse gas emissions based on the Clean Air Act.[163]  The Court held that agency action requires "something more than a merely plausible textual basis for the agency action."[164]  Instead, the agency "must point to 'clear congressional authorization' for the power it claims."[165]

In contrast to the broad exercise of authority at issue in *West Virginia*, BLM's authority to restrict motor vehicle access has clear congressional authorization.  As the United States points out, Congress has directed that "each agency administering any area designated as wilderness shall be responsible for preserving the wilderness character of the area."[166]  And, with limited exceptions, federal statutes provide that "there shall be no temporary road, no use of

---

[161] *See Teigen*, 511 F.3d at 1086 (holding that the plaintiffs' conclusory allegations that the classification lacks a rational basis and was created with malicious intent were insufficient to support an equal protection claim); *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995) (holding that conclusory allegations, without corresponding factual basis, were insufficient to withstand a motion to dismiss).

[162] *Complaint* at 28–29 (citing *West Virginia v. EPA*, 142 S. Ct. 2587 (2022)).

[163] *See* 142 S. Ct. at 2605–06.

[164] *Id.* at 2609.

[165] *Id.* (quoting *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014)).

[166] 16 U.S.C. § 1133(b); *see also Defendants' Motion* at 10 (discussing the statutory and regulatory overlay of BLM's motor vehicle restriction).

motor vehicles, [or] motorized equipment" in these areas.[167]  When Congress designated Plaintiffs' former off-roading destinations as wilderness areas, they therefore conferred on BLM—the agency "administering" the designated areas—a clear mandate to take the exact agency actions Plaintiffs now challenge as unauthorized.[168]

In any event, Plaintiffs do not refer to any statutory authority for their third cause of action or other grounds to provide a cognizable cause of action.  While the court "construe[s] [their] pleadings liberally, . . . and make[s] some allowance for deficiencies," it "cannot take on the responsibility of serving as [their] attorney in constructing arguments and searching the record."[169]  Plaintiffs' argument that "[t]he BLM has [become] a land eating monster chewing up multiple use lands and spitting out nothing but Wilderness,"[170] while vivid, does not rise to the level of specificity needed to state a plausible claim for relief, even when considering their pro se status.[171]  Recognizing it is not the court's role to act as a pro se litigant's attorney "in constructing arguments and searching the record,"[172] the court therefore dismisses Plaintiffs' final cause of action.

### E.  Miscellaneous Claims

Having concluded that Plaintiffs' four discernable causes of action fail to withstand Defendants' Rule 12(b)(6) challenge, the court notes the Complaint contains fragments of other

---

[167] 16 U.S.C. § 1133(c).

[168] *See Complaint* at 28–29.

[169] *Lankford v. Wagner*, 853 F.3d 1119, 1121–22 (10th Cir. 2017) (internal quotation marks and citations omitted).

[170] *Complaint* at 29.

[171] *See Jenkins*, 514 F.3d at 1032 (explaining that a "plaintiff still has 'the burden of alleging sufficient facts on which a recognized legal claim could be based'" (quoting *Hall*, 935 F.2d at 1110)); *see also Warnick*, 895 F.3d at 751 (discussing the general standards for complying with Rule 12(b)(6)).

[172] *Lankford*, 853 F.3d at 1121–22 (internal quotation marks and citations omitted).

potential claims as well.  For example, the Complaint reflects numerous APA-related allegations and statements from earlier pleadings that attempted to set out APA claims.[173]  In addition, Plaintiffs' broad language when discussing Defendants' purported due process violations could be seen as asserting a substantive, rather than procedural, due process challenge.[174]  But these conclusions are far from clear, and the parties do not attempt to address any additional causes of action in their briefing.[175]  Though the court has an obligation to liberally construe Plaintiffs' pleadings, the court cannot serve as their attorney "in constructing arguments and searching the record."[176]  Therefore, the court does not address any potential causes of action or grounds for relief aside from those discussed above.

## III.    Type of Dismissal

Finding that Plaintiffs have not pleaded a cognizable claim, the court now turns to the question of whether dismissal should be with or without prejudice.  At this point, Defendants have been subjected to three different lawsuits, which assert essentially the same constitutional claims.  Under these circumstances, Defendants' request for dismissal with prejudice is understandable.  But this is also the first time Plaintiffs have had their claims—as opposed to their standing—fully addressed by a district court.  And this court is cognizant of the fact that

---

[173] *See generally Huck I Complaint* at 18–20; *Huck II Complaint* at 25–27.

[174] *See Complaint* at 26–28.

[175] *See generally Defendants' Motion*; Dkt. 17, *Plaintiffs' Opposition to Defendants' Motion*; Dkt. 18, *Defendants' Reply in Support of Their Motion*; Dkt. 21, *Plaintiffs' Motion for Consideration of New Case Law and Evidence.*

[176] *Lankford*, 853 F.3d at 1121–22 (internal quotation marks and citations omitted); *see also Jackson-Cobb v. Sprint United Mgmt.*, 173 F. Supp. 3d 1139, 1145 n.5 (D. Colo. 2016) (explaining that a court cannot raise arguments on behalf of a party that it has not raised itself); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("[D]istrict courts . . . have a limited and neutral role in the adversarial process, and [should be] wary of becoming advocates who comb the record . . . and make a party's case for it.").

"[a] pro se action is ordinarily dismissed under Rule 12(b)(6) *without* prejudice," except where "the action is manifestly lacking in merit and any potential amendment would be futile."[177]  In other words, "[if] it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading . . . , the court should dismiss with leave to amend."[178]  Accordingly, Plaintiffs' claims are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' Motion is GRANTED IN PART and DENIED IN PART.  Plaintiffs' claims are hereby DISMISSED without prejudice.  In addition, Plaintiffs' Motion for Ruling on Defendants' Motion to Dismiss[179] and Motion for Consideration of New Case Law[180] are DENIED as moot.  The Clerk of Court is directed to close the case.

SO ORDERED this 21st day of September, 2023.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[177] *Webster v. Durbin*, No. 21-1246-EFM, 2022 U.S. Dist. LEXIS 28237, at *8 (D. Kan. Feb. 16, 2022) (citing *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001)).

[178] *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990) (internal quotation marks and citation omitted).

[179] Dkt. 19.

[180] Dkt. 21.